**UNITED STATES of America,**

v.

**Keith Stanford IRICK et al.**

**Crim. No. 73–H–376.**

United States District Court,
S. D. Texas,
Houston Division.

Jan. 4, 1974.

Anthony J. P. Farris, U. S. Atty., F. Witcher McCullough, III, Asst. U. S. Atty., Houston, Tex., for government.

Philip S. Greene, Houston, Tex., for Irick.

Harry L. Tindall, Houston, Tex., for Kay.

Buddy W. Gregory, Houston, Tex., for Myers.

Edward L. Lasof, Houston, Tex., for Peel.

## MEMORANDUM AND ORDER

NOEL, District Judge.

In this criminal prosecution under 18 U.S.C. § 111, each defendant moves to

dismiss the indictment for failure to charge an offense. Fed.R.Crim.P. 12(a). The indictment charges defendants "did forcibly assault, resist, oppose, impede, intimidate, and interfere with . . . . a Special Agent of the Drug Enforcement Administration, United States Department of Justice." Section 111 of Title 18 prohibits such conduct when directed toward any person designated in 18 U.S.C. § 1114. Section 1114 lists numerous groups of federal employees and officers including "any officer or employee . . . . of the Bureau of Narcotics and Dangerous Drugs." Section 1114 does not name special agents of the Drug Enforcement Administration.

Defendants contend the indictment must be dismissed because it does not charge a crime proscribed by Sections 111 and 1114. Because defendants' position is valid, the motion to dismiss must be granted. Defendants also contend that any such statutory construction and application in this case would be unconstitutional. Having disposed of the case on the defendants' first ground of attack, it is not necessary to reach the constitutional question.

The Bureau of Narcotics and Dangerous Drugs was abolished and the Drug Enforcement Administration was established by Reorganization Plan No. 2 of 1973. 1973 U.S. Code Cong. & Admin. News p. 912 (March 28, 1973). It became effective July 1, 1973 without Congressional action, 5 U.S.C. § 906. On July 10, 1973, pursuant to Executive Order 11727, July 6, 1973, the Attorney General transferred the function of the Bureau of Narcotics and Dangerous Drugs to the Drug Enforcement Administration by amending the Code of Federal Regulations. 28 Fed.Reg. 18380 (1973). Thus, the Drug Enforcement Administration, its officers and employees, are the successors to the Bureau of Narcotics and Dangerous Drugs, its officers and employees in function and authority.

Nevertheless, the Congress has not yet amended § 1114 of Title 18 to reflect this change. Consequently on August 27, 1973 when the incident made the basis of this indictment took place, Sections 111 and 1114 proscribed assaults against Bureau of Narcotics and Dangerous Drugs agents but not against Drug Enforcement Administration agents. The question posed by this case is whether 18 U.S.C. §§ 111, 1114 may be constitutionally construed to apply to employees of a new federal agency which replaces an enumerated agency. The alternative to such construction is the requirement of congressional action before this inclusion can occur.

Both statutory history and a plain reading of Section 1114 demonstrate congressional intent to enact a limited specific statute. The Senate version of the original bill covered " . . . any official or employee of the United States." S.R. 535, 73rd Cong., 2nd Sess. (1934). The final statute, however, specifically named the officials and employees covered. H.R. 1593, 73rd Cong., 2nd Sess. (1934). By subsequent amendment, other groups of federal employees were added.

The statute remains very specific and explicit. The particular groups of federal officials and employees to be covered are enumerated. In some cases, the statute includes all employees of a particular agency, e. g., the secret service. In other cases all federal officials performing a particular function are covered, e. g., any immigration officer, Bennett v. United States, 285 F.2d 567 (5th Cir. 1960). In many instances, only those employees of named departments who perform particular functions are mentioned, e. g., any officer or employee of the National Aeronautics and Space Administration directed to guard and protect property of the United States under the administration and control of the National Aeronautics and Space Administration.

■ The obvious purpose of the statute is to provide the protection of the federal courts to those certain officers. United States v. Langone, 445 F.2d 636, 637 (1st Cir. 1971). Nevertheless, it is clearly not meant to sweep in every interference with any federal official. United States v. Johnson, 462 F.2d 423, 428 (3rd Cir. 1972).

More importantly in this instance, the statute does not purport to cover successor agencies to those enumerated. Instead, the Congress has regularly amended the statute to reflect changes in agency organization and nomenclature. In 1970, for example, the statute was altered to reflect changes from the Post Office Department to the U. S. Postal Service and from the Bureau of Narcotics to the Bureau of Narcotics and Dangerous Drugs. This regular amendment, rather than inclusion in the statute of the words, "successor agencies or officials" or words of like effect, evidence a congressional intention that legislative amendment rather than judicial construction is meant to be the proper means of updating the statute. See Pierce v. United States, 314 U.S. 306, 62 S.Ct. 237, 86 L.Ed. 226 (1941).

■ A narrow, literal reading of the statute is consistent with general principles of criminal law. See Clark & Marshall, Law of Crimes § 1.07 (7th ed. 1967) ; 21 Am.Jur.2nd, Criminal Law § 17 (1965) ; 22 C.J.S. Criminal Law § 17 (1961). The maxim, expressio unius est exclusio alterius (expression of one thing implies exclusion of another) is appropriate here. A court should not depart from the plain meaning of the statutory language. United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 96, 5 L.Ed. 37 (1820). Also relevant is the principle that penal sanctions are to be strictly construed. United States v. Standard Oil Company, 384 U.S. 224, 255, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966). The definition of criminal conduct is a legislative rather than judicial function, and the Courts should be reticent to broadly read criminal statutes. United States v. Kehoe, 365 F.Supp. 920 (S.D. Texas Nov. 8, 1973).

■ The judicial construction and application of Section 1114 urged by the government raises serious constitutional questions which are not required to be answered.[1] Statutes are to be construed so as to avoid a danger of unconstitutionality. United States v. Harriss, 347 U.S. 612, 619, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

■ The Court concludes that Section 1114 of Title 18 applies only to those departments, agencies, and bureaus specifically named therein. It cannot be construed to apply to employees not named by the statute. This is true even if the group in question is successor to employees named by the statute. Accordingly, the Court holds that 18 U.S.C. §§ 111, 1114 do not prohibit the conduct alleged in the indictment. Unless and until the Congress acts, the government must rely on the state penal system to protect special agents of the Drug Enforcement Administration.

In the instant case, defendants' Motions must be granted, and the indictment dismissed.

The Clerk shall file this Memorandum and Order and send copies to all counsel.

---

[1]. The same result may be constitutionally required. The common law requirement of statutory definiteness and specificity is so fundamental as to be required by due process. Connally v. General Construction Co., 269 U.S. 285, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Judicial construction enlarging a plainly written statute to include conduct not obviously described by the statute is constitutionally impermissible. Pierce v. United States, 314 U.S. 306, 62 S.Ct. 237, 86 L.Ed. 226 (1941). Furthermore, application of new judicial interpretations to pending criminal cases challenges the prohibition of ex post facto law. U.S.Const. art. I, § 10; Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed. 894 (1964) ; Talavera v. Wainwright, 468 F.2d 1013 (5th Cir. 1972).